**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. __1:12-cv-01275__

DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT;
SAN JUAN CITIZENS ALLIANCE;
SIERRA CLUB;
CENTER FOR BIOLOGICAL DIVERSITY; and
AMIGOS BRAVOS,

           Plaintiffs,

v.

UNITED STATES OFFICE OF SURFACE MINING RECLAMATION
AND ENFORCEMENT, an agency within the U.S. Department of the Interior;
KENNETH L. SALAZAR, in his official capacity as Secretary of the Interior;
AL KLEIN, in his official capacity as Regional Director of U.S. Office of
Surface Mining Reclamation and Enforcement, Western Region;
BOB POSTLE, in his official capacity as Manager of the Program Support
Division for the Western Region of the Office of Surface Mining
Reclamation and Enforcement;
RICK WILLIAMSON, in his official capacity as Manager of the Indian Programs Branch of the
Western Region of the Office of Surface Mining Reclamation and Enforcement; and
MYCHAL YELLOWMAN, in his official capacity as Navajo Mine Team
Leader in the Office of Surface Mining Reclamation and Enforcement,

           Federal Defendants.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND PETITION FOR REVIEW OF AGENCY ACTION**

---

## I.    INTRODUCTION

1.    Plaintiffs DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT, SAN

JUAN CITIZENS ALLIANCE, SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY,

and AMIGOS BRAVOS (collectively, "Citizen Groups") hereby bring this civil action for declaratory and injunctive relief against the OFFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT (OSM) pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, for violation of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h.

2. The action challenges OSM's decision to permit the Navajo Mine to expand strip-mining operations into 714 acres of a portion of land designated "Area IV North" on the Navajo Nation Indian Reservation, in San Juan County, New Mexico.

3. This civil action is a companion to *Diné Citizens Against Ruining our Environment v. Klein* (*Diné CARE*), 747 F. Supp. 2d 1234, 1263-64 (D. Colo. 2010) (Civil Action No. 07-cv-1475-JLK). In that case, the U.S. District Court for the District of Colorado vacated a previous proposal to strip mine all 3,800 acres of Area IV North and ordered the OSM to revisit its NEPA analysis. The present Area IV mine expansion was proposed on remand in the wake of *Diné CARE*.

4. This mine expansion permits the Navajo Mine operator, BHP Navajo Coal Company (BHP), to strip-mine 12.7 million tons of sub-bituminous coal, which, by contract, will then be burned in the Four Corners Power Plant (FCPP). FCPP generates electricity that is sold to consumers in New Mexico, Arizona, California, and Texas. FCPP is the largest emitter of nitrogen oxides ($NO_x$) in the United States and is among the nation's largest emitters of greenhouse gas pollution (GHGs), and mercury.

5. The extraction, combustion, and waste disposal of the 12.7 million tons of coal from the proposed mine expansion to Area IV North will cause the release of significant amounts

of pollution, including mercury, GHGs, and various other air and water pollutants, adversely affecting San Juan County, the Four Corners region, and, indeed, the planet itself.

6.      San Juan County is currently the worst county in New Mexico for releases of toxic materials into the environment, among the top ten percent of the worst counties in the nation for releases of toxic materials into the environment, and among the top ten percent of worst counties in the nation for particulate matter and sulfur dioxide air pollution.

7.      The American Southwest is an epicenter of the effects of climate change, which are harming both human and ecological systems.  The impacts of climate change in the Southwest are expected to worsen with the increase in atmospheric concentrations of GHGs. Minorities, low-income populations, and Indian tribes in and around San Juan County are particularly vulnerable to the many and worsening impacts of climate change.

8.      Despite ample evidence of potentially significant impacts, OSM approved the Area IV North expansion by only considering impacts to human health and the environment in a vacuum.  OSM specifically ignored numerous indirect and cumulative impacts beyond the perimeter of the mine expansion, in particular the indirect impacts caused by the combustion of coal and the disposal of coal ash waste, as well as additive, synergistic, and cumulative impacts of the mine expansion when combined with other past, present, and reasonably foreseeable impacts.

9.      OSM also downplayed the magnitude of the mine expansion's impacts, glossing over impacts to justify a Finding of No Significant Impact (FONSI) when, instead, there are substantial questions that impacts may be significant, necessitating preparation of an environmental impact statement (EIS).

3

10.	OSM also unlawfully segmented connected and cumulative actions, which should have been considered in a single NEPA analysis, including but not limited to FCPP, the Bureau of Indian Affair's consideration of an extension of FCPP's lease, and reasonably foreseeable future expansion of the Navajo Mine.

11.	Because of OSM's failure to take a hard look at the potentially significant environmental impacts of the mine expansion, the Citizen Groups are compelled to bring this civil action.

12.	If they prevail, the Citizen Groups will seek an award of  attorneys' fees, costs, and other expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## II.	JURISDICTION AND VENUE

13.	This Court has federal-question jurisdiction over this action, which arises under the laws of the United States.  28 U.S.C. § 1331.

14.	The requested relief is authorized by 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 705, 706.

15.	The requested relief would redress the Citizen Groups' actual, concrete injuries caused by OSM's failure to comply with it duties mandated by NEPA and its implementing regulations and policies.

16.	The challenged agency actions are final and subject to judicial review pursuant to 5 U.S.C. §§ 702, 704, 706.

17.	Plaintiffs have exhausted any and all available and required administrative remedies.

18.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(e), because a substantial part of the events and omissions giving rise to this case occurred in OSM's Western Region offices located in Denver, Colorado.  The challenged agency decision occurred on remand from this Court's previous decision in *Diné CARE*, 747 F. Supp. 2d 1234 (D. Colo. 2010).

## III.     PARTIES

19.     Plaintiff DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT (DINÉ CARE) is an all-Navajo organization comprised of a federation of grassroots community activists in the Four Corners region of Arizona, New Mexico, and Utah who strive to educate and advocate for their traditional teachings derived from Diné Fundamental Laws.  DINÉ CARE's goal is to protect all life in their ancestral homeland by empowering local and traditional people to organize, speak out, and assure conservation and stewardship of the environment through civic involvement, engagement and oversight in decision-making processes relating to tribal development, and oversight of government agencies' compliance with all applicable environmental laws.  DINÉ CARE members live, use, and enjoy the areas and landscapes that will be affected by the Area IV North expansion of the Navajo Mine.  DINÉ CARE brings this action on its own behalf and on behalf of its adversely affected members.

20.     Plaintiff SAN JUAN CITIZENS ALLIANCE (SJCA) is a non-profit organization with over 500 members in the Four Corners region.  SJCA is actively involved in monitoring and scrutinizing energy development, overseeing government decision-making and compliance with environmental laws, advocating for cleaner air quality and better stewardship of natural systems, promoting reduced energy consumption, energy efficiency and renewable energy, and working

for improvements to community health. SJCA members in the Four Corners region live in areas of existing high-density energy development and infrastructure. SJCA members are adversely affected by mining operations at the Navajo Mine, including the Area IV North expansion, as well as impacts from FCPP's pollution. SJCA brings this action on its own behalf and on behalf of its adversely affected members.

21. Plaintiff SIERRA CLUB is the oldest, largest, and most influential grassroots environmental organization in the United States. SIERRA CLUB has over 600,000 members and supporters who work for safe and healthy communities, smart energy solutions to combat global warming, and an enduring legacy for America's wild places. Since 1892 the SIERRA CLUB has been working to protect communities, wild places, and the planet itself. SIERRA CLUB's work includes overseeing government decision-making and assuring compliance with environmental laws. It has been a priority of the SIERRA CLUB nationally and locally to stop irresponsible coal mining, curb global warming, and ensure clean air and clean water for all. In New Mexico, SIERRA CLUB has over 7,000 members, including members in the Four Corners region who are adversely affected by the Navajo Mine and will be adversely affected by the Area IV North expansion. SIERRA CLUB brings this action on its own behalf and on behalf of its adversely affected members.

22. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the CENTER) is a non-profit 501(c)(3) corporation with offices in Arizona, New Mexico, California, Nevada, Oregon, Washington, Alaska, Illinois, Minnesota, Vermont, and Washington, D.C. The CENTER works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction. The CENTER has 320,000 members and online activists throughout the

6

United States, Colorado, New Mexico, and the world. The CENTER is actively involved in species and habitat protection issues worldwide, including throughout the western United States. The CENTER, its members, and staff members use the lands in and near the BHP Navajo Mine—in particular the Chaco and San Juan Rivers—for recreational, scientific, and aesthetic purposes. They also derive recreational, scientific, and aesthetic benefits from these lands through wildlife observation, study, and photography. The CENTER and its members have an interest in preserving their ability to enjoy such activities in the future. As such, the CENTER and its members have an interest in helping to ensure their continued use and enjoyment of these activities on these lands. The Center is particularly concerned about species and critical habitats that are affected by coal mining at the Navajo Mine. The CENTER brings this action on its own behalf and on behalf of its adversely affected members.

23.    Plaintiff AMIGOS BRAVOS is a nonprofit river conservation organization whose mission is to preserve the ecological and cultural integrity of New Mexico's rivers and watersheds by assuring compliance with environmental laws and holding polluters and governments accountable for their actions. Through this work, AMIGOS BRAVOS ensures that New Mexico's rivers and watersheds provide clean water for irrigating, swimming, fishing, and boating. AMIGOS BRAVOS' effort is inspired by New Mexico's traditional water users and guided by the vision of water as both a cultural and natural resource. AMIGOS BRAVOS has members throughout New Mexico that use and enjoy the water resources of New Mexico for irrigation, livestock watering, fishing, recreation, spiritual pursuits, and aesthetic interests. AMIGOS BRAVOS is increasingly concerned that the observed and anticipated impacts of global warming and climate change will compromise its interests and the interests of its

7

members.  AMIGOS BRAVOS brings this action on its own behalf and on behalf of its adversely affected members.

24.    The Citizen Groups and their members have concrete and particularized interests in protecting land, air, water, communities, and ecosystems from the direct, indirect, and cumulative impacts of coal mining, including specifically coal-mining in the Four Corners region.  The Citizen Groups, thus, have a concrete and particularized interest in the pollution and environmental degradation that result from the strip-mining operations at Navajo Mine, including the proposed Area IV North mine expansion.

25.    The Citizen Groups and their members have deep ties to San Juan County and the Four Corners region.  The lives of members of the Citizen Groups have been shaped and enriched by the culture and ecology of this region.  Members live, work, raise families, recreate, conduct scientific research, and follow their religious faiths in this region, including areas near and directly adjacent to the Navajo Mine.  Members use this landscape for photography, aesthetic enjoyment, and spiritual contemplation.  Members also hike, hunt, camp, fish, boat, garden, raise crops, and observe wildlife in the mountains, mesas, forests, valleys, rivers, arroyos, and lakes that compose this landscape, including areas near and directly adjacent to the Navajo Mine.  The families of some members have done so for centuries.  Members will continue to do so in the future and on an ongoing basis.  All hope their descendants are able to continue to do so for generations and centuries to come.

26.    The Citizen Groups educate and organize the public in the Four Corners region and beyond about coal, climate change, energy, public health, and environmental protection to protect and advance their interests.  The Citizen Groups monitor and scrutinize government

8

action related to coal development to assure that the true costs of coal to the broader Four Corners region, including communities both on and off of the Navajo Nation, are considered prior to any decision that perpetuates or increases the use of coal as an energy source.  This is particularly important because the coal that will be mined in the Area IV North expansion will be burned to generate electricity that will be sold to and used by consumers in New Mexico, Arizona, California, and Texas.  The Citizen Groups additionally advocate for a transition away from coal and towards clean energy alternatives that, unlike coal, do not compromise public health or the environment.

27.    Additionally, the on-the-ground disturbances from strip-mining coal and the release of other pollutants from coal mining, combustion, and disposal impairs the resiliency and the ability of the communities in which members of the Citizen Groups live and the ecological systems that members value and depend on to withstand the impacts of climate change.

28.    The Citizen Groups and their members have concrete procedural interests in OSM's full compliance with NEPA prior to allowing the expansion of strip-mines, such as the Navajo Mine here.  The groups will suffer procedural harm if OSM fails to comply with the requirements of NEPA in its analysis of the proposed expansion of the Navajo Mine.

29.    OSM's approval of the Area IV North expansion without conducting an adequate environmental analysis pursuant to NEPA increases the risk of environmental harm to the concrete interests of the Citizen Groups and their members.

30.    OSM's decision, made without the foresight and deliberation required by NEPA, increases the likelihood of significant direct, indirect, and cumulative harm to the Citizen Groups and their members from pollution to the air, the water, and the land.

31.     OSM's failure to comply with NEPA will result in uninformed decision-making, which creates additional risk of actual, threatened, and imminent harm to the concrete interests of the Citizen Groups and their members.

32.     If this Court requires OSM to comply with NEPA, as requested by this civil action, the harm to the Citizens Groups and their members will be alleviated.

33.     Defendant OSM is a federal agency within the United States Department of the Interior that regulates coal strip-mining programs and operations in the United States pursuant to the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. §§ 1201-1328.  OSM's Western Regional Office has permitting authority over the Navajo Mine.

34.     Defendant KENNETH L. SALAZAR is the Secretary of the United State Department of the Interior and is responsible for managing BLM public lands, including federal lands held in trust for the Navajo Nation.  In his official capacity, Mr. SALAZAR is responsible for implementing and complying with federal law, including the federal laws implicated by this action.

35.     Defendant AL KLEIN is the Regional Director of the Western Regional Office of OSM and is responsible for managing federal coal resources, including those involved in this action.  In his official capacity, Mr. KLEIN is responsible for implementing and complying with federal law, including the federal laws implicated by this action.

36.     Defendant BOB POSTLE is the Manager of the Program Support Division of the Western Regional Office of OSM and is responsible for managing federal coal resources, including those involved in this action.  In his official capacity, Mr. POSTLE is responsible for

10

implementing and complying with federal law, including the federal laws implicated by this action.

37.    Defendant RICK WILLIAMSON is the Manager of the Indian Programs Branch of the Western Regional Office of OSM and is responsible for managing federal coal resources, including those involved in this action.  In his official capacity, Mr. WILLIAMSON is responsible for implementing and complying with federal law, including the federal laws implicated by this action.  Mr. WILLIAMSON signed OSM's letter approving the Area IV mine expansion.

38.    Defendant MYCHAL YELLOWMAN is the Navajo Mine Team Leader of the Western Regional Office of OSM and is responsible for managing federal coal resources, including those involved in this action.  In his official capacity, Mr. YELLOWMAN is responsible for implementing and complying with federal law, including the laws implicated by this action.  Mr. YELLOWMAN signed the letter to the Citizen Groups, which included OSM's rejection of the group's objections to OSM's environmental analysis.

## IV.    BACKGROUND

### A.  Navajo Nation and Four Corners Region

39.    The Navajo Mine is located in the Four Corners region, where the states of New Mexico, Colorado, Utah, and Arizona meet.  This region is the ancestral homeland of the Navajo (or "Diné") people.  It is an area bounded by four sacred mountains: "Blanca Peak to the northeast, Mount Taylor to the southwest, the San Francisco Peaks to the southwest, and Hesperus Mountain to the northwest."  *Diné CARE*, 747 F. Supp. 2d 1234, 1239 (D. Colo. 2010).

11

40.     During the early history of the Navajo Nation Indian Reservation, the tribe "relied upon traditional endeavors such as sheep and cattle herding, fiber production, weaving, jewelry making, and art trading for income and employment." *Id.* at 1240.

41.     The Four Corners region is encircled by numerous national parks, sometimes known as "the Golden Circle of National Parks." Source Specific Federal Implementation Plan for Implementing Best Available Retrofit Technology for Four Corners Power Plant: Navajo Nation, 75 Fed. Reg. 64,221, 64,222 (Oct. 19, 2010).

42.     In this region, there are sixteen mandatory Class I Federal airsheds: Arches National Park, Bandelier National Monument, Black Canyon of the Gunnison Wilderness Area, Canyonlands National Park, Capitol Reef National Park, Grand Canyon National Park, Great Sand Dunes National Park, La Garita Wilderness Area, Maroon Bells-Snowmass Wilderness Area, Mesa Verde National Park, Pecos Wilderness Area, Petrified Forest National Park, San Pedro Parks Wilderness Area, West Elk Wilderness Area, Weminuche Wilderness Area, and Wheeler Park Wilderness Area.

43.     These natural amenities draw millions of tourists to the region annually and are an important pillar of the regional economy.

44.     Water supplies are the lifeblood of the Southwest. The San Juan River, one of the principal tributaries of the Colorado River, is a critical water source. The San Juan River receives substantial seasonal flows from tributaries, including the Chaco River.

### B.  Energy Development

45.     San Juan County and the Four Corners Region have witnessed massive, industrial-scale fossil fuel extraction and combustion over the past half century.

46.     San Juan County is now the worst county in New Mexico for releases of toxic materials into the environment, among the top ten percent of the worst counties in the nation for releases of toxic materials into the environment, and among the top ten percent of worst counties in the nation for particulate matter and sulfur dioxide air pollution.

47.     The sixteen Class I areas surrounding the Navajo Mine and FCPP have impaired air quality and visibility.

48.      The New Mexico Surface Water Quality Bureau has determined that all portions of the nearby San Juan, Animas, and La Plata Rivers are impaired by one or more pollutants.

49.     Historical monitoring of the Chaco River, which is adjacent to the Navajo Mine and FCPP, reveals that levels of aluminum, cadmium, copper, mercury, selenium and zinc have regularly exceeded water quality standards.

50.     Mercury pollution is a particular concern in the Four Corners Region.

51.     Mercury is released by coal mines and coal-fired power plants.

52.     Mercury can be found in toxic levels in fish in many areas of San Juan County.

53.     Mercury is a potent poison, which, even in small amounts, can cause physiological problems, illness, and even death.

54.     Ozone is also a pollutant of concern in San Juan County.  Nitrogen oxides form ozone when released into the atmosphere.

55.     FCPP, the nation's largest source of $NO_x$, emits over 40,000 tons of $NO_x$ each year.

56.     Ozone measurements in San Juan County have exceeded National Ambient Air Quality Standards (NAAQS) on various occasions over the past ten years.

13

57.     Exposure to ozone is associated with increased emergency room visits for asthma.

58.     The rate of chronic lower respiratory disease in San Juan County is higher than the corresponding rate in New Mexico or the United States.

59.     This increased rate of chronic lower respiratory disease has been connected to the county's high levels of ozone.

60.     Increased temperatures in the Southwest due to climate change are expected to aggravate ozone pollution.

61.     FCPP is one of the largest sources of GHG pollution in the United States.

62.     FCPP burns 8.5 million tons of coal from the Navajo Mine each year, releasing over 13 million tons of GHG pollution.

63.     The San Juan Generating Station, just to the north of the Navajo Mine and FCPP, is also a major source of GHG pollution in the United States, releasing nearly 11 million tons of GHG pollution annually.

64.     The proliferation of oil and gas development in the San Juan Basin and in the vicinity of the Navajo Mine and FCPP, including development of federal mineral resources that are leased by OSM's parent, the Department of the Interior, and OSM's sister agency, the Bureau of Land Management contributes additional GHG pollution.

65.     The increase in GHG concentrations in the global atmosphere is changing the Earth's climate.  The increased GHG concentrations are chiefly due to the burning of fossil fuels by humans.

66.     Among the most the most vulnerable to the impacts of climate change are Native American tribes (especially those in the Southwest), minorities, and the poor.

14

67.      Despite over a half-century of intense energy development, poverty is epidemic on the Navajo Nation Indian Reservation where the unemployment rate is over 50% and the poverty rate is 30% and higher.

### C.  Navajo Mine and Four Corners Power Plant

68.      The Navajo Mine is an open-pit coal strip-mine that sprawls across more than 13,000 acres of northwestern New Mexico.

69.      The Navajo Nation originally leased the mineral interests in 1957 to BHP's predecessor in interest.  Currently, over 33,000 acres have been leased by the Navajo Nation to BHP for the Navajo Mine.

70.      Strip-mining operations at the Navajo Mine started in the early 1960s.

71.      The mine is and has always been the sole source of coal for the FCPP.

72.      FCPP was constructed specifically to burn coal from the Navajo Mine.

73.      It is not feasible for FCPP to obtain coal from any source except the Navajo Mine.

74.      FCPP is and has always been the mine's only customer.  *Diné CARE*, 747 F. Supp. 2d at 1240.

75.      The operator of FCPP, Arizona Public Service (APS), expects to continue operating the power plant for at least two more decades.  75 Fed. Reg. at 64,228.

76.      If FCPP reduces its consumption of coal, the Navajo Mine will have no other market for its coal and will reduce production accordingly.

77.      Coal combustion waste from FCPP was historically backfilled in the Navajo Mine for nearly forty years, from the 1970s to 2008.  Coal combustion waste was also heaped in unlined piles in the Chaco drainage basin and remains there today, unprotected from erosion.

Pollution leaching from the coal combustion waste is likely adversely affecting adjacent water bodies.

78.    The Bureau of Indian Affairs is currently reviewing a proposed lease extension for FCPP.

79.    No environmental impact statement (EIS) has been prepared for the totality of the Navajo Mine, though portions of the mine were indirectly evaluated in three EISs prepared three decades ago.

80.    The Navajo Mine has been incrementally expanded six times since 1989, and for each expansion OSM has prepared only an EA.

81.    OSM has never prepared an EIS for the Navajo Mine, let alone an EIS that considers alternatives or takes a hard look at the direct, indirect, and cumulative impacts of past, present, and reasonably foreseeable development.

82.    In 2005 OSM approved a permit revision for expansion of the Navajo Mine into the entirety of Area IV North (3,800 acres). *Diné CARE*, 747 F. Supp. 2d at 1241.

83.    The Federal District Court for the District of Colorado held that in approving the mine expansion, OSM violated NEPA in various regards and remanded the matter to the agency to conduct an environmental analysis that complied with NEPA. *Id.* at 1250-64. Specifically, the court ordered the agency to reevaluate its decision not to prepare an EIS, given the magnitude of the proposed mine expansion.

### D. Challenged EA/FONSI

84.    On remand after the conclusion of *Diné CARE*, OSM again declined to prepare an EIS for the proposed Area IV expansion.

85.     Rather than prepare an EIS, OSM scaled back the acreage of the proposed extension from 3,800 acres to 714 acres.

86.     The Area IV expansion will permit the mining and sale for combustion at FCPP of 12.7 million tons of coal, coal which would not otherwise be mined or burned.

87.     Even though OSM reduced the acreage of the proposed Area IV expansion, the agency admits that mining in the rest of Area IV North and Area IV South is "reasonably foreseeable."

88.     OSM issued a draft EA and unsigned FONSI for the proposed Area IV expansion on December 1, 2011.  OSM provided for a thirty-day comment period.  OSM failed to translate the EA and unsigned FONSI into the Navajo language.

89.     Diné CARE, SJCA, and the Center requested OSM to extend the comment period for sixty days.

90.     In response, OSM extend the comment period for seventeen days, through January 17, 2012.

91.     The Citizen Groups submitted extensive public comments regarding the adequacy of the EA.

92.     On March 16, 2012, OSM approved the Area IV extension.

93.     On March 16, 2012, OSM also posted responses to public comments on its website; however, the agency did not electronically notify the Citizen Groups of the permit approval.

17

94.     On March 16, 2012, OSM released the cumulative hydrologic assessment (CHIA) of the expected impacts of the proposed mine expansion.  The CHIA revealed persistent and highly elevated concentrations of mercury pollution in the Chaco River.

95.     OSM did not provide a convincing statement of reasons justifying its FONSI and decision to forgo preparation of an EIS.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### (NEPA VIOLATION)
**Failure to consider connected and cumulative actions**

96.     The Citizen Groups incorporate by reference all preceding paragraphs.

97.     NEPA requires OSM to consider connected and cumulative actions in a single environmental analysis.  40 C.F.R. § 1508.25(a)(1), (2).

98.     Actions are connected if they "[c]annot or will not proceed unless other actions are taken previously or simultaneously" or if they are "interdependent parts of a larger action and depend on the larger action for their justification."  40 C.F.R. § 1508.25(a)(1)(ii), (iii). Cumulative actions are actions "which when viewed with other proposed actions have cumulatively significant impacts and should therefore be discussed in the same impact statement."  40 C.F.R. § 1508.25(a)(2).

99.     Here, past, present and reasonably foreseeable mining and mine expansions at Navajo Mine and FCPP, including the Bureau of Indian Affairs' pending decision on extension of the plant's lease, are connected and cumulative actions that OSM was required to consider in the same environmental analysis.

100.    OSM's segmentation of its analysis of the mine-power plant complex violated NEPA, and was arbitrary and capricious in violation of the standards of the APA.  5 U.S.C. § 706(1), (2)(A).

### SECOND CLAIM
### (NEPA VIOLATION)
**Failure to take a hard look at impacts to the human environment**

101.    The Citizen Groups incorporate by reference all preceding paragraphs.

102.    Pursuant to NEPA, OSM is required to take a hard look not only at direct impacts, but also at the indirect and cumulative effects of the proposed Area IV expansion of the Navajo Mine.  40 C.F.R. § 1508.25(c).

103.    Direct impacts are those that occur at the same time and place as the proposed action.  Indirect impacts are caused by the action but occur later in time or are farther removed in distance, but are still reasonably foreseeable.

104.    Indirect impacts include related effects on air and water and other natural systems, including ecosystems.  40 C.F.R. § 1508.8(a)-(b).

105.    Cumulative impacts are "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future action regardless of what agency (Federal or non-Federal) or person undertakes such other actions."  40 C.F.R. § 1508.7.  "Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time."  *Id.*

106.    Here the proposed Area IV expansion, individually and when added to other past, present, and reasonably foreseeable future actions, including but not limited to additional strip-mining at the Navajo Mine, coal combustion at FCPP, disposal of coal combustion waste, and

19

energy development in San Juan County and the Four Corners region, may have significant, cumulative impacts on the communities and environment in the region.

107.    In its EA of the Area IV expansion, OSM refused and/or failed to take a hard look at numerous indirect and cumulative impacts as required by NEPA.

108.    OSM's refusal and/or failure to consider these relevant factors was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or constitutes "agency action unlawfully withheld or unreasonably delayed," or both in violation of the standards of the APA.  5 U.S.C. §§ 706(1), (2)(A).

### THIRD CLAIM
### (NEPA VIOLATION)
### Failure to Prepare EIS or Provide Convincing Reasons for Foregoing EIS

109.    The Citizen Groups incorporate by reference all preceding paragraphs.

110.    NEPA requires OSM to prepare an EIS when a federal action "significantly affect[s] the quality of the human environment."  42 U.S.C. § 4332(2)(C).

111.    To determine the significance of the environmental impacts of a federal action, the agency must evaluate context and intensity.  40 C.F.R. § 1508.8(27).

112.    Context requires analysis of an action "in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality."  40 C.F.R. § 1508.27(a).  In this analysis, "[b]oth short- and long-term effects are relevant."  *Id.*

113.    In evaluating the intensity of a proposed action, an agency must consider ten significance factors, including beneficial and adverse impacts, affects on public health and safety, unique characteristics of the geographic area (such as proximity to historic and cultural resources and park lands), controversy regarding the environmental effects, the degree to which

possible effects are highly uncertain or involve unique or unknown risks, cumulatively significant effects, and the degree to which the action may affect threatened or endangered species.  40 C.F.R. § 1508.27(b)(1)-(10).

114.    Under these criteria, the proposed Area IV North raises substantial questions as to whether the expansion may have significant environmental impacts, requiring preparation of an EIS.

115.    OSM's failure to prepare an EIS violates NEPA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or constitutes "agency action unlawfully withheld or unreasonably delayed," or both in violation of the standards of the APA. 5 U.S.C. § 706(1), (2)(A).

## REQUEST FOR RELIEF

116.    The Citizen Groups incorporate by reference all preceding paragraphs.

117.    WHEREFORE, the Citizen Groups respectfully request that this Court grant the following relief:

> A.    A declaratory judgment that OSM's decision to approve the mine expansion of the Navajo Mine into Area IV North on the basis of an EA and FONSI violates NEPA and the regulations and policies promulgated thereunder;
>
> B.    A declaratory judgment that OSM's environmental assessment of the proposed expansion of the Navajo Mine into Area IV North was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law and/or constitutes agency action unlawfully withheld or delayed under the APA;

21

**C.**      An injunction setting aside OSM's approval of the extension of the Navajo

Mine into Area IV North and remanding the matter to OSM with instructions to

prepare an environmental impact statement;

**D.**      A mandatory and permanent injunction prohibiting OSM from permitting

any ground-disturbing activity in Area IV North of the Navajo Mine until OSM

remedies the violations of NEPA complained of herein;

**E.**      An award to the Citizens Groups of costs and expenses of litigation,

including reasonable attorneys' fees, pursuant to the Equal Access to Justice Act

(EAJA), 28 U.S.C. § 2412.

**F.**      An award of such other relief that the Court deems necessary, just, and

proper.

Respectfully submitted this 15th day of May 2012,


 /s/ Kyle Tisdel
Kyle Tisdel (CO Bar No. 42098)
Western Environmental Law Center
208 Paseo del Pueblo Sur #602
Taos, New Mexico 87571
(t) 575-613-8050
(f) 575-751-1775
tisdel@westernlaw.org

Erik Schlenker-Goodrich (NM Bar No. 17875)
Western Environmental Law Center
208 Paseo del Pueblo Sur #602
Taos, New Mexico 87571
(t) 575-613-4197
(f) 575-751-1775
eriksg@westernlaw.org

Shiloh S. Hernandez (MT Bar No. 9970)
Western Environmental Law Center

22

103 Reeder's Alley
Helena, Montana 59601
(t) 406-204-4861
(f) 406-443-6305
hernandez@westernlaw.org

*Counsel for Plaintiffs*

**Dine' CARE**
HC 63 Box 263
Winslow, AZ 86047

**San Juan Citizens Alliance**
PO Box 2461
1022 ½ Main Ave.
Durango, CO 81302

**Sierra Club**
85 Second Street, 2nd Floor
San Francisco, CA 94105

**Center for Biological Diversity**
P.O. Box 1178
Flagstaff, AZ 86002-1178

**Amigos Bravos**
P.O. Box 238
Taos, NM 87571