IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 12-cv-01275-JLK

DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT,
SAN JUAN CITIZENS ALLIANCE,
SIERRA CLUB,
CENTER FOR BIOLOGICAL DIVERSITY, and
AMIGOS BRAVOS,

        Petitioners,

v.

UNITED STATES OFFICE OF SURFACE MINING RECLAMATION AND
ENFORCEMENT, an agency within the U.S. Department of the Interior;
SALLY JEWELL, in her official capacity as Secretary of the Interior;
AL KLEIN, in his official capacity as Regional Director of the U.S. Offices of Surface Mining
Reclamation and Enforcement, Western Region;
BOB POSTLE, in his official capacity as Manager of the Program Support Division for the
Western Region of the Office of Surface Mining Reclamation and Enforcement;
RICK WILLIAMSON, in his official capacity as Manager of the Indian Programs Branch of the
Western Region of the Office of Surface Mining Reclamation and Enforcement; and
MYCHAL YELLOWMAN, in his official capacity as Navajo Mine Team Leader in the Office
of Surface Mining Reclamation and Enforcement;

        Respondents, and

THE NAVAJO TRANSITIONAL ENERGY COMPANY, LLC

        Intervenor-Respondent

---

**ORDER**

---

Kane, J.

In the antecedent to this Order, issued March 2, 2015, I concluded that the United States

Office of Surface Mining Reclamation and Enforcement ("OSM") violated the National

Environmental Policy Act ("NEPA"), by failing to consider adequately the environmental

1

impacts related to the combustion of coal that will be mined as a result of its approval of the Navajo Transitional Energy Company's ("NTEC") Permit Revision Application in its Environmental Assessment/Finding of No Significant Impact ("EA/FONSI") for NTEC's Permit Revision Application.  Accordingly, I sustained Petitioners' challenge to OSM's EA/FONSI and its approval of NTEC's Permit Revision Application, and I ordered the parties to confer in an effort to reach an agreement with respect to the appropriate remedy.

The parties have failed to reach an agreement as to the appropriate remedy.  In lieu of such an agreement, the parties have presented briefs summarizing their arguments in support of their proposed remedies.  Although the parties concur that remand to OSM is appropriate, they disagree as to whether OSM's EA/FONSI and its approval of NTEC's Permit Revision Application should be vacated pending OSM's compliance with NEPA.

Petitioners argue that I should vacate OSM's EA/FONSI and OSM's approval of NTEC's Permit Revision Application.  They urge that vacatur is consistent with NEPA's purpose of ensuring that federal agencies consider the environmental impacts of their actions before undertaking any "major federal action."  They also argue that equitable factors counsel in favor of remand with vacatur, because any prospective damage to OSM and NTEC would be relatively minor and short-lived.

The Federal Respondents and the Intervenor-Respondent argue that the appropriate remedy is remand without vacatur.  These parties suggest that OSM's violation of NEPA, which they assert is relatively minor, is outweighed by the potential disruption that would be caused if I were to vacate OSM's EA/FONSI and its approval of the Permit Revision Application.  Specifically, they argue that vacatur would have a significant economic impact on the Navajo

Mine and the Navajo Nation, and that it could threaten the reliability of the region's power supply.

Based on the inherent jurisdictional authority of this court and upon consideration of my March 2, 2015, Memorandum Opinion and Order (Doc. 79), the parties' arguments regarding the appropriate remedy, and the entirety of the pleadings and arguments offered in this case, I rule for the reasons that follow that OSM's EA/FONSI and its approval of NTEC's Permit Revision Application are VACATED, pending OSM's compliance with NEPA, and REMANDED to the agency for further proceedings consistent with my March 2, 2015, Memorandum Opinion and Order.

*Principles Informing Determination of Appropriate Remedy*

When a federal agency fails to comply with its obligation to consider the environmental impacts of its action before undertaking a "major federal action," the normal remedy is vacatur. *See* 5 U.S.C. § 706(2) (directing courts to "set aside" agency action found to violate statutory obligations).  Nonetheless, courts retain equitable discretion to fashion an appropriate remedy, *see* 5 U.S.C. § 702 (preserving the power of courts to apply equitable factors in the remedies analysis), and in some cases equitable principles counsel in favor of remand without vacatur. *See*, *e.g.*, *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1021 (E.D. Cal. 2013).

Although the Tenth Circuit has not specifically addressed the factors to be considered in determining whether vacatur is an appropriate remedy, other courts have adopted a balancing test, which weighs the seriousness of the deficiencies in the completed rule-making and the doubts the deficiencies raise about the validity of the agency's ultimate decision against the harm that might arise from vacating the agency's action.  *See, e.g.*, *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *Cal. Communities Against Toxics v. U.S. EPA*, 688 F.3d 989,

992 (9th Cir. 2012). Although these decisions do not limit or define my exercise of discretion in this case, I find them persuasive, and I use this framework as a starting point for my determination of the appropriate remedy for OSM's violation of NEPA.

## DISCUSSION

### *Deficiencies in Rulemaking*

In its EA/FONSI for NTEC's proposed expansion of its mining operations, OSM failed to discuss the mercury-related indirect effects of NTEC's proposed expansion. Nonetheless, Respondents argue that this deficiency "does not raise serious doubts" about OSM's analysis and approval of NTEC's Permit Revision Application. Respondents' Remedies Brief (Doc. 80) at 3-4. In support of this argument, they attempt to distinguish the findings of a 2009 Draft Biological Opinion, which was included in the Administrative Record and upon which I relied in finding that OSM violated NEPA in approving NTEC's Permit Revision Application. Respondents argue that because the decision analyzed in the 2009 Draft Biological Opinion is demonstrably different than the decision analyzed in the EA for the Permit Revision Application, the findings of the 2009 Draft Biological Opinion are inapplicable. *Id*. at 4. They also argue that the 2009 Draft Biological Opinion is inapplicable because it fails to take into account the EPA's 2012 regulation addressing national mercury emissions. *Id*. at 5. Given these factors, Respondents suggest that "it is likely that OSM will be able to substantiate its finding of no significant impact on remand." *Id*. at 5.

Notwithstanding Respondents' and Intervenor-Respondent's arguments to the contrary, I determine that this deficiency does indeed raise serious doubts about the validity of OSM's EA/FONSI and its approval of NTEC's Permit Revision Application. Based on the record before the agency at the time it issued this EA/FONSI, it is apparent that these mercury-related

4

indirect effects could have significant impacts on threatened and endangered species in the area impacted by the Four Corners Power Plant, *see* AR 1-2-14-1990.  It is also apparent that, on remand, OSM's consideration of these impacts could provide ample basis for denial of NTEC's Permit Revision Application.  *See* 30 C.F.R. § 773.15.  Accordingly, I conclude that this factor weighs in favor of vacatur.

*Harm that Might Arise from Vacatur*

Respondents and Respondent-Intervenor argue that the potential economic harm of vacatur outweighs the deficiencies in OSM's EA/FONSI for the Permit Revision Application.  They argue that vacatur could result in significant impacts to both NTEC and the Navajo Nation, and suggest that vacatur of the decision approving the 830-acre expansion could ultimately lead to the closure of the Navajo Mine and the Four Corners Power Plant.

Intervenor-Respondent has demonstrated that vacatur would cause some economic harm.  If OSM's approval of NTEC's expansion is vacated, it will cost NTEC approximately $ 400,000 per month to alter its mining operations to meet its contractual obligations to supply coal to the Four Corners Power Plant.  *See* Declaration of Shawn D. Goeckner (Doc. 82-3) at ¶ 18.  This expense is not insignificant, and, depending on the length of time it would take OSM to remedy its NEPA violation on remand, the expense could be quite sizeable.

Nonetheless, I conclude that this prospective economic harm does not outweigh the doubts concerning the validity of OSM's actions that are raised by the deficiencies in OSM's EA/FONSI and its approval of NTEC's Permit Revision Application.  As a threshold matter, it is important to note that the responsibility for such delay and expense lies with Respondents and not with Petitioners.  Furthermore, notwithstanding their conclusory statements to the contrary, neither Respondents nor Respondent-Intervenor have demonstrated that vacatur is likely to

ultimately lead to the closure of the Navajo Mine or the Four Corners Power Plant.  Even if I were to vacate OSM's approval of NTEC's Permit Revision Application, NTEC will be able to meet its continuing contractual obligation to supply coal to the Four Corners Power Plant through July of 2016.  *Id*. at ¶ 16.  *See also* AR 1-2-11-189 to -190.  Furthermore, OSM is not foreclosed from re-approving NTEC's proposed expansion into Area IV North after it has fully complied with its obligation to consider the reasonably foreseeable potential environmental impacts of the proposed expansion.

Finally, if, as Respondents suggest, the deficiencies in OSM's FONSI and permit approval are in fact easily correctible, the length of any delay in mining in Area IV north should be relatively short.  As both Petitioner and Intervenor-Respondent note, OSM may be able to comply with NEPA in regards to its obligations relating to its consideration of NTEC's Permit Revision Application by tiering to a pending, and soon to be completed, comprehensive EIS for the Navajo Mine and the Four Corners Power Plant.

*Other Factors*

A number of other factors influence my determination of the appropriate remedy for OSM's violation of NEPA.  First, I am mindful of NEPA's purpose of ensuring that federal agencies meaningfully consider the potential environmental impacts of a proposed action <u>before</u> undertaking that action.  *See* 40 C.F.R. § 1506.1(a)-(b); 42 U.S.C. § 4332(C)(v).  Remand alone will not fulfill NEPA's purpose.  Absent some limitation on NTEC's ability to continue its operations while OSM corrects its NEPA violation, OSM's compliance with NEPA could become a mere bureaucratic formality.

Furthermore, if NTEC's operations continue unabated, a significant additional amount of coal will be extracted and combusted over the term of NTEC's coal supply contract.  AR 1-2-11-

285. The cumulative effects of that combustion, which would not occur but for OSM's approval of NTEC's Permit Revision Application, endanger public health and the environment. *See* Petitioners' Remedies Brief (Doc. 81) at 7-10.[1]

Finally, there is an important interest in "encouraging tribal self-sufficiency and economic development." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216 (1987). There is, however, a significant countervailing interest in ensuring OSM's compliance with NEPA. *See, e.g.*, *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Accordingly, the public interest in continued mining is balanced by the public interest in ensuring OSM's compliance with NEPA.

## CONCLUSION

After considering and weighing all of these interests, I conclude that OSM's EA/FONSI and its approval of NTEC's Permit Revision Application should be VACATED, pending OSM's compliance with NEPA, and REMANDED to OSM for further proceedings consistent with my March 2, 2015, Memorandum Opinion and Order.

Furthermore, any petition by Petitioners for attorney fees and costs shall be submitted on or before 45 days (or the next business day should that day fall on a weekend or court holiday) from the date this order issues. IT IS SO ORDERED.

Dated: April 6, 2015                                BY THE COURT:

                                                    s/ John L. Kane
                                                    Senior U.S. District Court Judge

---

[1] Intervenor-Respondent argues that an injunction will not offer Petitioners any meaningful relief, because the Four Corners Power Plant will continue to combust coal mined from Area III in the absence of a supply from Area IV North. The environmental effects resulting from the combustion of coal mined from Area III are not, however, at issue here. The environmental impacts of extracting and combusting an additional 12.7 million tons of coal to be mined from Area IV North form the basis of the instant controversy.